UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| United States of America, | No. 19-20024 |
| Plaintiff, | Hon. Gershwin A. Drain |
| v. | |
| | **Offense:** |
| D-1 Naveen Prathipati, | 18 U.S.C. § 371 |
| | Conspiracy to commit visa fraud and |
| Defendant. | harbor aliens for profit |
| | |
| | **Maximum Penalty:** 5 years |
| | |
| | **Maximum Fine:** $250,000 |
| | |
| | **Supervised Release:** |
| | Not more than 3 years |

## GOVERNMENT'S SENTENCING MEMORANDUM

Defendant Naveen Prathipati is a foreign citizen who abused a student visa program so that he could remain in the United States illegally. Moreover, he recruited other foreign students to do the same, and in return for his recruitment efforts, he received $15,000 in profits. Accordingly, the United States of America respectfully recommends that the Court impose against Prathipati a sentence within his guidelines range of **18–24 months**, as calculated by the U.S. Probation Department. Such a sentence is necessary in light of the seriousness of the offense, the need to punish Prathipati and deter others from committing the same misconduct,

Prathipati's personal characteristics, and the goal of avoiding unwanted sentencing disparities.

## I.  BACKGROUND

Defendant Naveen Prathipati is a citizen of India—and not the United States—who first traveled to this country on a temporary student visa known as an F-1 visa. (PSR, p. 4 & ¶ 9). Before he could obtain his F-1 visa, Prathipati applied to study in the United States at a university through the Student and Exchange Visitor Program ("SEVP"), which is overseen by the Department of Homeland Security. (*Id.* at ¶ 10–11). Once accepted by a university—in this case the University of Detroit Mercy—the school issued a "Certificate of Eligibility for Nonimmigrant Student Status," better known as a Form I-20. (*Id.* at ¶¶ 10–11, 55).

Prathipati's Form I-20 permitted him to enter the United States, (*id.* at ¶ 12), which he first did on December 28, 2013. (*Id.* at ¶ 48). While in the United States, he used his Form I-20 for identification and proof of legal and academic status in the United States, and it also allowed for him to travel abroad and return to the United States. (*Id.* at ¶ 12). For his Form I-20 to remain valid, Prathipati knew that he needed to maintain his status as a full-time student "making normal progress toward completion of [his] course of study," whether at his original school or any school to which he later transferred. (*Id.* at ¶¶ 13–14); (*see also* Dkt. # 25, Plea Hrg. Tr., PgID 79, 15:18–22).

Prathipati's visa and Form I-20 also permitted him to participate in curricular practical training ("CPT"), which in essence permitted him to find gainful employment as long as he continued to attend classes and make academic progress toward his degree. (PSR, ¶¶ 14–15).

From May 2017 through January 2019, undercover agents from Homeland Security Investigations ("HSI") posed as employees of the University of Farmington ("the University"), located in Farmington Hills, Michigan. (*Id.* at ¶ 16). The University had no instructors, no classes, and no educational activities. (*Id.* at ¶ 17). Rather, it was a fictitious university used by foreign citizens as a "pay to stay" scheme. (*Id.*). Under the "pay to stay" scheme, foreign citizens would enroll with the University as "students," but they would take no classes nor attend any educational programs; instead, they would pay tuition so that the University would issue them Form I-20's that identified them as students making progress toward a degree, and if they desired, they could also seek gainful employment through the CPT program. (*Id.* at ¶¶ 17–18).

Prathipati first learned of the University through Facebook. (*Id.* at ¶ 19). On May 18, 2017, he traveled to the University and met with an undercover HSI agent to discuss enrolling in the University without attending classes in order to fraudulently maintain his immigration status and to obtain a fraudulent degree. (*Id.* at ¶ 20). During the meeting, Prathipati acknowledged that such an arrangement was

illegal, yet he enrolled anyway. (*Id.* at ¶ 24); (*see also* Dkt. # 25, Plea Hrg. Tr., PgID 81–83, 17:14–19:2).

Prathipati also raised the idea of recruiting other students in return for tuition credits at $500 per student. (PSR, ¶¶ 20, 23); (Dkt. # 25, PgID 83–84, 19:3–20:2). Specifically, he identified and referred other foreign citizens who knowingly enrolled with the University in order to fraudulently maintain their status. (PSR, ¶ 20). In total, Prathipati recruited at least fifteen students, and in addition to the tuition credits he received for his efforts ($7500), he also received $7500 in cash from the University. (*Id.* at ¶¶ 21–23); (Dkt. # 25, PgID 84–85, 20:11–21:2). Below, he can be seen collecting $7500 from an HSI agent (whose image is obscured):



Prathipati has pled guilty to conspiring to commit visa fraud (18 U.S.C. § 1546(a)) and harboring aliens for profit (8 U.S.C. § 1324) in violation of 18 U.S.C. § 371—without the benefit of a Rule 11 agreement, although the government did

4

offer one. (PSR, ¶¶ 1, 6). Prathipati's co-conspirators are the foreign citizen "students" he recruited. (*Id.* at ¶¶ 21, 25); (Dkt. # 25, PgID 88–91, 24:8–27:7).

The maximum sentence for his offense is not more than five years' imprisonment, a maximum fine of $250,000, and an applicable term of supervised release between one year and five years. (PSR, p. 2 & ¶¶ 60, 65, 67).

## II. SENTENCING GUIDELINES CALCULATIONS AND § 3553(a) FACTORS

In determining an appropriate sentence, the Court should use the Sentencing Guidelines as a "starting point and the initial benchmark." *United States v. Lalonde*, 509 F.3d 750, 763 (6th Cir. 2007) (quoting *Gall v. United States*, 552 U.S. 38, 49 (2007)). Indeed, a sentence within the guidelines range carries a "rebuttable presumption of reasonableness." *United States v. Buchanan*, 449 F.3d 731, 734 (6th Cir. 2006). This is so because the guidelines "represent nearly two decades of considered judgment about the range of sentences appropriate for certain offenses." (*Id.* at 736) (Sutton, J., concurring). In particular, the guidelines aggregate the "sentencing experiences of individual judges, the administrative expertise of the [Sentencing] Commission, and the input of Congress…." *Id.*

Beyond the Guidelines, the Court should consider all of the factors set forth in 18 U.S.C. § 3553(a). *Gall*, 552 U.S. at 49–50. The § 3553(a) factors include:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
> (2) the need for the sentence imposed—

>> (A) to reflect the seriousness of the offense, to promote respect
> for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; [and]
>
> \*\*\*
>
> (6) the need to avoid unwanted sentence disparities among defendants with similar records who have been found guilty of similar conduct….

18 U.S.C. § 3553(a).

### A.    Prathipati's Sentencing Guidelines

The government agrees with the Probation Department that Prathipati's total offense level is 14 and his criminal history category is II, which results in a guidelines range of 18–24 months. (PSR, ¶ 61); (*see also id.* at ¶¶ 31–39, 40–43).

Prathipati's conduct in this case demonstrates why his guidelines of 18–24 months are appropriate. He may suggest his role in committing fraud and harboring illegal aliens for profit stemmed from his attempt to help foreign national students obtain an education—including for some students who sought to transfer from schools that were in danger of losing their accreditation.[1] But his and his students'

---

[1] These schools cater to "students" who want to exploit our foreign student education program. While they are the exception rather than the rule, unfortunately they do exist. Some of the "pay to stay" schools located around the United States that have been exposed over the years are: Prodee University; Neo-America Language School; Walter Jay M.D. Institute; the American College of Forensic Studies; Likie Fashion and Technology College; Tri-Valley University; Herguan University; the University of Northern Virginia; and the American College of Commerce and

aims were not so noble.

Their true intent could not be clearer. While "enrolled" at the University, one hundred percent of the foreign citizen students <u>never</u> spent a single second in a classroom. If it were truly about obtaining an education, the University would not have been able to attract anyone, because it had no teachers, classes, or educational services. Instead, Prathipati and the foreign nationals he recruited wanted to commit a fraud upon the United States. At the outset, Prathipati informed his recruits there would be no classes and no education. The "students" willingly paid thousands of dollars to the undercover agents so that they could obtain fraudulent documents (Form I-20's) that would allow them to illegally stay, re-enter, and work in the United States.

But Prathipati's conduct was much more offensive than that of his recruits. Once he knew exactly what the University was—a fraud—he, not the University, raised the idea of recruiting other students who would be willing to commit fraud. He did so in order to make money. Specifically, in exchange for finding and enlisting others to remain in the United States illegally, he received $15,000 in cash and tuition credits. Hence, his illegal arrangement with the University proved to be quite profitable for him.

---

Technology. *See also* https://www.buzzfeednews.com/article/mollyhensleyclancy/inside-the-school-that-abolished-the-f-and-raked-in-the-cash (last visited June 17, 2019) (describing the "educational" practices of Northwestern Polytechnic University).

Therefore, Prathipati's conduct makes a guidelines sentence appropriate, and there are no legitimate reasons to vary below that range. Nonetheless, under our immigration laws, Prathipati must be sentenced to at least 12 months in custody to permanently bar him from re-entering the United States. Such a bar is certainly fitting in this case, since Prathipati intentionally exploited our student visa system for his own financial gain. He did so with the full knowledge that most of his customers/"students" wanted to illegally enter the United States job market or do whatever they wanted to do while illegally staying in the United States. As a direct result of his actions, his recruited students—who were illegally working in the United States—deprived otherwise qualified individuals from obtaining employment or training.

### B.     Sentencing Reform Act factors

#### 1.     Seriousness of the offense

Prathipati's decision to conspire to harbor aliens and commit visa fraud is a serious offense, as indicated by Congress's decision to authorize up to five years in prison for the offense. *See* 18 U.S.C. § 371; (PSR, ¶ 60). Specifically in this case, the F-1 student visa program is designed to promote and encourage foreign students to study at American institutions. (PSR, ¶¶ 9–13). Once they finish their course of study, the students must leave within 15 days. (*Id.* at ¶ 13). The idea is that the students return to their native countries armed with new knowledge and skills.

Accordingly, the F-1 student visa program is not a naturalization program—i.e., it is not intended to be a path to obtaining U.S. citizenship. (*See* Dkt. # 25, Plea Hrg. Tr., PgID 78–79, 14:25–15:3).

Prathipati and his co-conspirators (his recruited students) ignored the purpose of the F-1 student visa program. In fact, Prathipati has remained in the United States since December 2013, (PSR, ¶ 48), totaling over five years in the United States before he was arrested on January 31, 2019. (*Id.* at ¶ 3). During those five years, in particular during his time with the University, he obtained employment at various companies at pay rates ranging from $45 an hour to $70 an hour. (*Id.* at ¶ 56). Those jobs could have gone to U.S. citizens or to other foreign students and employees who were in the United States on valid visas.

In addition, immigration and visa programs have been hot-button topics in the United States for years and national scrutiny has only been increasing. Fairly or unfairly, Prathipati's conduct casts a shadow on the foreign-student visa program in general, and it raises questions as to whether the potential for abuse threatens to outweigh the benefits. Thus, this factor favors a prison sentence within the guidelines range of 18–24 months.

### 2.   Deterrence, protection of the public, and nature and circumstances of the offense

If he receives a guidelines sentence, Prathipati will be deported once he serves his sentence, and he will be permanently barred from returning to the United States in the future. And even without a permanent bar from a guidelines sentence, Prathipati will likely be deported, and there is no way to know whether he will return to the United States. Therefore, personal deterrence is not applicable here. Nonetheless, it should be noted that leniency has not had the desired effect on Prathipati. In November 2015, he was granted a deferred guilty plea for retail fraud under the Youthful Training Act for attempting to steal clothes, but he violated probation by failing to report and a warrant for his arrest issued. (PSR, ¶ 40). In June 2017, Prathipati was accepted into a diversion program after he failed to return a rental car on time, (*id.* at ¶ 44), but he committed that offense around the same time he began recruiting students for the University. (*Id.* at ¶ 20). Thus, it seems Prathipati learns the wrong lesson from leniency.

While personal deterrence may not be achievable here, the Court can deter others from committing similar crimes. According to an SEVP summary issued by U.S. Immigration and Customs Enforcement in November 2016, 1.23 million foreign students were studying in the United States on student visas in 2016, and 8697 schools were certified to enroll international students. https://www.ice.gov/doclib/sevis/pdf/byTheNumbersDec2016.pdf (p. 2). This

action and the related actions—19-cr-20025 and 19-cr-20026—have garnered considerable media attention since the indictments were unsealed. Presumably, the sentences in this case and the related cases will also receive media focus. As a result, strong sentences against Prathipati and the other defendants would have a considerable chance of deterring other foreign students—and some schools—from abusing the F-1 student visa program. In addition, as indicated by the success Prathipati and the other defendants had in recruiting students to the University, at the very least their vast network of students and potential students could be deterred by guidelines sentences.

In light of the above, a deterrent prison sentence between 18 and 24 months is appropriate.

### 3. Characteristics of the defendant

Prathipati indicated he has a loving and supportive family, both in India and in the United States. (PSR, ¶ 47). He attended a university in India and obtained a degree in engineering, and he also had the opportunity to earn a Master's degree from Wayne State University, although he ultimately failed to graduate. (*Id.* at ¶ 53). Thus, he has received support, love, and opportunities that many defendants who appear before this Court have not, and yet he still chose to commit the instant offense. As a result, Prathipati's personal characteristics counsel that a prison sentence of 18–24 months is appropriate.

### 4. Need to avoid sentencing disparities

The Supreme Court reiterated in *Booker* that reducing sentencing disparities was Congress's basis statutory goal in passing the Federal Sentencing Guidelines. *United States v. Booker*, 543 U.S. 220, 250, 264 (2005). Thus, calculating and analyzing the guidelines is the primary driver in avoiding unwanted sentencing disparities. *Id.* at 264 ("The district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing."). Indeed, by correctly calculating and considering the Sentencing Guidelines, the Court automatically gives "significant weight and consideration to the need to avoid unwarranted disparities." *Gall v. United States*, 552 U.S. 38, 54 (2007).

Therefore, solely with respect to Prathipati, this factor favors a prison sentence within the guidelines range of 18–24 months. However, the Court should also be mindful of the seven other recruiters charged in the related cases, 19-cr-20025 and 19-cr-20026, for whom it will have to impose sentences. In addition to Prathipati, those recruiters helped enlist hundreds of foreign citizens to enroll at the University with the goal of fraudulently maintaining their status in the United States. *See United States v. Kakireddy et al.*, No. 19-cr-20026 (E.D. Mich.) (Dkt. # 1, PgID 9). Because Prathipati will be the first of the eight defendants to be sentenced, his sentence will be the benchmark against which the seven other sentences are measured.

## III. CONCLUSION

For the reasons stated above, the government recommends a sentence within Prathipati's guidelines range of 18–24 months.

Respectfully submitted,

MATTHEW SCHNEIDER
United States Attorney

*/s/Brandon C. Helms*
Ronald W. Waterstreet
Timothy P. McDonald
Brandon C. Helms
Assistant United States Attorneys
211 W. Fort Street, Suite 2001
Detroit, MI   48226
Phone: (313) 226.9100
Email: Ronald.Waterstreet@usdoj.gov
Email: Timothy. McDonald@usdoj.gov
Email: Brandon.Helms@usdoj.gov

Dated: June 17, 2019

13

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 17, 2019, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system, which will provide notification to all counsel of record.

*/s/Brandon C. Helms*
Brandon C. Helms
Assistant United States Attorney